# Walsh, to Use, Appellant, v. Luzerne County.

*Public officers—Fees—State constabulary—Service of criminal warrant—Collection of fee for commonwealth.*

A public officer who is prevented by statute, or by judicially established principles of public policy, from demanding and collecting for his own use a fee for serving a criminal warrant, cannot demand and collect it for the use of the commonwealth.

A member of the state constabulary cannot collect from a county for the use of the commonwealth, a fee for serving a criminal warrant.

Argued March 4, 1908. Appeal, No. 53, March T., 1908, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1907, No. 1,159, on verdict for defendant in case of John F. Walsh to use of Commonwealth v. Luzerne County. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine liability for a fee for serving a criminal warrant.

FERRIS, J., filed the following opinion:

The facts as agreed upon are as follows:

1. John F. Walsh, the person above named as the legal plaintiff, is a member of the state police as constituted by the Act of assembly of May 2, 1905, P. L. 361, and as such is entitled to and receives a compensation paid him by the state of Pennsylvania.

2. The said Walsh duly executed a warrant regularly and properly issued November 20, 1906, by alderman Pollock, a committing magistrate of Luzerne county, against Andrew Gulick charged with assault and battery in said county, the legal fees for which service when performed by a constable, being the sum of $1.24.

3. The case of the Commonwealth v. Andrew Gulick was so proceeded with in the court of quarter sessions of Luzerne county that the jury rendered a verdict of not guilty as to the defendant therein and directed that the county of Luzerne pay the costs.

4. That the above amount of $1.24 for the service of said Walsh in executing the said warrant was duly taxed as part of the costs in said case.

5. That the said sum of $1.24 does not belong to said John F. Walsh personally, but is claimed in this case as the property of the commonwealth of Pennsylvania to whose use the suit is brought.

The sole legal point submitted is stated as follows:

The question for the decision of the court is whether the said Walsh, as member of the state constabulary and agent and employee of the state of Pennsylvania, is entitled to recover the said costs for the use of the commonwealth. If he is, judgment for said amount of $1.24 to be rendered for plaintiff, John F. Walsh, for the use of the commonwealth of Pennsylvania. If not, for the defendant the county of Luzerne.

In Musser et al. v. Good, 11 S. & R. 247, Mr. Justice GIBSON drew this distinction between costs and fees: "Costs are an allowance to a party for expenses incurred in conducting his suit; fees are a compensation to an officer for services rendered in the progress of the cause. . . . As between a party and the officer, charges for service rendered are fees; as between the parties to the cause, being in contemplation of law charges actually paid by successful party, or at least, such as have created a responsibility to the officer, they are costs." Fees, therefore, are not costs unless there exist a right in the officer to receive them and a "responsibility," meaning, of course, a legal liability by the party for whom the services were rendered, to pay them "as compensation" for such services. Unless Walsh, as a member of the state police force, had a right to receive the fees here in question they are not costs at all, and were improperly so taxed as such. It is conceded, and we think properly so, that as a salaried police officer of the state he is not legally entitled to demand these fees for his own use. It is against the policy of the law in this state to permit public officials to exact double compensation for services rendered, and it would seem to be in pursuance of that policy that the Act of July 14, 1897, P. L. 266, was passed: Weaver v. Schuylkill County, 17 Pa. Superior Ct. 327. It is

entitled "An Act to regulate the remuneration of policemen and constables employed as policemen throughout the Commonwealth of Pennsylvania, and prohibiting them from charging or accepting any fee or other compensation, in addition to their salary, except as public rewards and mileage for traveling expenses." It will be noticed that this title refers to policemen and constables employed as policemen in general without regard to how or by whom they were chosen or employed.

Section 1 provides that "all municipalities and corporations employing policemen" shall pay them a fixed salary and prohibits such policemen from charging or accepting any fee or other compensation for services rendered except public rewards and mileage. It would seem sufficiently clear that this section was intended to include "Railroad Police," the "Coal and Iron Police," the (fisheries) corporation police provided for by the Acts of February 27, 1865, P. L. 225; April 11, 1866, P. L. 99, and June 10, 1881, P. L. 101, respectively, and, in general, all police similarly appointed at the request of, and required to be paid by, nonmunicipal corporations or associations.

Section 2 of the act of 1897, makes it unlawful for any high, ward, township or other constable who is at the same time employed as a policeman in any city, borough or other part of this commonwealth to charge or accept any fee or other compensation in addition to the salary paid him as policeman for service rendered.

The Act of May 2, 1905, P. L. 361, relating to the state police, authorizes their appointment and payment by salary and, in section 5, provides as follows: "The various members of the Police Force are hereby authorized and empowered to make arrests, without warrant, for all violations of the law which they may witness, and to serve and execute warrants issued by the proper authorities. They are also authorized and empowered to act as forest, fire, game and fish wardens; and in general to have the powers and preogatives conferred by law upon members of the police force of cities of the first class, or upon constables of the Commonwealth; and are intended,

as far as possible, to take the place of the police now appointed at the request of the various corporations."

If they are "as far as possible to take the place" of the corporation police in the sense of occupying a like position under the law, then it may with some show of reason be argued that the legislature "intended" that they should be subject to the prohibition of the acceptance of fees which by the terms of section 1 of the act of 1897, expressly applied to policemen employed by corporations. Or, again, if the state police are to have the "prerogatives" of policemen of first-class cities and of constables of the commonwealth, and if the word "prerogatives" as here used means right, emoluments, immunities and privileges, including the right to compensation for services, then they must be confined to their salaries, as policemen employed by municipalities or constables at the same time employed as policemen are, under sections 1 and 2, respectively, of the act of 1897. We quite agree with the statement contained in the opinion of the former attorney general of the commonwealth (Mr. Carson), published in 16 Pa. Dist. Rep. 453, "that it was the intention of the legislature when it placed the members of the state Police Force upon a regular salary—a salary which is adequate—that this compensation should be in lieu of all fees and emoluments to which a local constable performing the same service would be entitled."

We also think that, on the subject of compensation to policemen, the act of 1897 and 1905 are in pari materia and, as construed together, evince a legislative intent that the members of the state police force should be taken to be within the prohibition of the former act. If it be conceded as doubtful whether they are covered by its strict letter, it can hardly be questioned that they are within its reason and spirit, nor that double compensation to a policeman employed by the state is quite as much within the mischief sought to be remedied, as such compensation to one employed by a municipal or nonmunicipal corporation.

It is argued, however, that though Walsh may not be entitled for his own use to the amount claimed, the use plaintiff, the commonwealth, may recover under the equitable doctrine

of subrogation or substitution, as partial reimbursement for the salary it has by law been compelled to pay in lieu of fees, which would otherwise be recoverable against the county as costs. We cannot assent to the proposition that the principle thus invoked could be applied in this case; but, granting that it could, the rights and remedies of the substituted party could rise no higher than those of the original claimant. "Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim so that he who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies or securities:" 27 Am. & Eng. Ency of Law (2d ed.), 202. Any person substituted under this doctrine would merely stand in the place of Walsh. If he have no legal claim, then there is nothing for anyone to be subrogated to.

The argument, however, is advanced by the present attorney general of the commonwealth, in an opinion published in 16 Pa. Dist. Rep. 914, that, conceding that Walsh is not entitled in his own right to the fees of a local constable for serving a warrant, nevertheless, being the agent and employee of the state he would be entitled to collect them for the use of his employer. With all due regard for the eminent source from which the opinion comes, we are unable to adopt this view. True, it eliminates the objection of double compensation to the officer for a single service, but at the expense of raising another which is not easily surmounted. Passing the question whether in an action by " A " to the use of " B " the latter could recover what the former could not, we find it difficult to see how the commonwealth can rightfully claim for the services of its agent what it has forbidden that an agent to "charge or accepts" for the use of himself or anyone else. But apart from the prohibition of the act of 1897, and assuming, for the purpose of this discussion, that it does not apply to the members of the state police force for the reason that the commonwealth is not a municipality or a corporation, and assuming, further, that the employment of a policeman under statutory authority raises between him and the employer the relation of master and servant or principal and agent (which may well

be doubted in view of decisions of both of our appellate courts to the contrary,—see Borough of Norristown v. Fitzpatrick, 94 Pa. 121; Miller v. Hastings Borough, 25 Pa. Superior Ct. 569), still, the question remains as to the scope of the agent's authority. The position taken by the learned attorney general assumes the right of a state policeman to collect revenue for the commonwealth. By whom, when and how was that right conferred? We search in vain in the act of 1905 or elsewhere for the grant of any such authority. That act was not passed as a revenue measure, but was very clearly an exercise of the police power of the state. The statute creates a department of state police and undoubtedly does make the appointees of the head of that department the agents of the state in the sense that all officers through whom the functions of government are exercised are such agents. But it also very distinctly enumerates their powers. Raising revenue is not one of them. We can but think that the maxim, "inclusio unius est exclusio alterius" is quite as applicable here as it is anywhere, and that the failure to include the power to collect money for the state among those expressly conferred is equivalent to a denial of such authority. If a state policeman may collect fees for the commonwealth, so may a municipal policeman for the city or borough. That is conceded. But so also, on the same theory, could a coal and iron policeman require the payment of fees for the use of the corporation that employed him. If we have here a correct legal principle, it should be applicable in all cases, and so all salaried state officers appointed under the statutory authority to perform specified duties must by virtue of such appointment act as fiscal agents and collect for the benefit of their employer, the commonwealth, such fees, or other adequate compensation (for why limit it to fees, since the duty to collect revenue arises from the relation of employer and employee) as would be commensurate with the services rendered. That certain salaried officials may collect fees and pay them into the public treasury is, of course, true; but in every instance where this is done it is because the express mandate of the law requires it, and not because of any inherent right or duty growing out of the fact

that the officer is elected by the people, or appointed by the governor or some other official through whom the sovereignty of the people is exercised, and is paid a salary out of the public purse.

Moreover, it is to be remembered that, in the case before us, the claim is, to have public money paid out of the public treasury of the county; and, on principle, it is immaterial whether the money be drawn by a state policeman to replenish the treasury of his employer, the state, or by a coal and iron policeman to fill the coffers of his employer, the coal and iron corporation. "By the common law no costs are paid out of the public treasury:" Wayne County v. Waller, 90 Pa. 99. "So entirely dependent on statutory regulations in Pennsylvania, that it is indispensible for every claimant to be able to point to the statute which enables him to receive what he claims:" Franklin County v. Conrad, 36 Pa. 317, 318. No such statute is pointed out in this case. No statute gives to a state policeman the right to receive fees for his own use or the use of the commonwealth. No statute requires or authorizes their payment by anyone. The act of 1897, in our opinion, forbids it. No "responsibility" for such a payment rests upon anyone; and, as already observed, without such responsibility they are not costs, and, therefore, the criminal procedure act of 1860, in permitting a petit jury to impose costs of prosecution upon the county, does not authorize the payment by the county of these "fees" to anyone.

Whether it be desirable that the state policemen should be empowered to collect for the use of the commonwealth the fees allowed by the law to constables not employed as policemen for similar services, is, obviously, a legislative and not a judicial question.

Being, therefore, of opinion that the plaintiff, John F. Walsh, is not entitled to recover the money in question either for his own use or that of the commonwealth, judgment is entered for the defendant in accordance with the agreement of the parties for a case stated.

*Error assigned* was the judgment of the court.

*George H. Troutman,* with him *M. Hampton Todd,* attorney general, for appellant.

*Wm. C. Price,* for appellee.

PER CURIAM, July 15, 1908:

While the jury in the criminal case directed by their verdict that the costs should be paid by the county, it seems to us clear that this did not impose upon the county liability for fees which were not legally taxable. Possibly, if an extremely technical view be taken of the case stated, it could be argued that the validity of the taxation of the fee in question as part of the costs of the case could not be questioned in this action. But counsel expressly waived this objection and argued, and requested us to dispose of, the case as if the question of liability of the county for the fee were duly raised in a direct proceeding. Another point to be noticed is that the appellant's counsel concede that the officer serving the warrant cannot claim the fee for his own use, although it is the legal fee prescribed for the same service when performed by a constable. This concession, say counsel, is not based on the Act of July 14, 1897, P. L. 266—which they claim does not apply—but, to quote from their brief, "on the broad ground, which has been repeatedly recognized in the courts of Pennsylvania, that no officer of the law should be allowed to collect two fees for the same public service; in this case one from the state in the shape of salary and the other from the county by virtue of the finding of a petit jury." In view of this concession it seems unnecessary to discuss or decide the question of the applicability of the act of 1897, to a member of the state police force. While differing in their reasons both parties give assent to the proposition that the officer cannot recover the fee in his own right. Therefore the question upon which the case turns is, whether an officer who is prevented by statute or by judicially established principles of public policy from demanding and collecting for his own use a fee for serving a criminal warrant may demand and collect it for the use of the commonwealth. The grounds upon which the contention that he may

is based are: first, that because the officer is an·agent and employee of the state and paid by the state all fees and costs otherwise going to him in that capacity belong to the state; second, that the doctrine of substitution and a principle analogous to that of subrogation in equity are applicable.. The earnest and able argument of appellant's counsel in support of these propositions seems to us to be fully considered and satisfactorily answered in the opinion filed by the learned judge below. We adopt his conclusion, and his reasoning in support of it, so far as it is based upon a consideration of the case apart from the act of 1897.

The judgment is affirmed.